UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF WASHINGTON

AT SEATTLE

| | |
|---|---|
| MICHAEL DEAN ADAMS,<br><br>                              Plaintiff,<br><br>         v.<br><br>MICHAEL J. ASTRUE, Commissioner of Social Security,<br><br>                              Defendant. | Case No. C12-901-RSM-BAT<br><br>**REPORT AND RECOMMENDATION** |

   Michael Dean Adams seeks review of the denial of his Supplemental Security Income and Disability Insurance Benefits applications.  He contends that the ALJ erred by (1) failing to comply with the Appeals Council's remand order; (2) finding Mr. Adams's multiple mental impairments to be non-severe; and (3) overlooking mental and physical limitations in the assessment of Mr. Adams's residual functional capacity, which led to erroneous findings at step four.  Dkt. 14 at 1.  As discussed below, the Court recommends the case be **REVERSED** and **REMANDED** for further administrative proceedings, pursuant to sentence four.

**I.       FACTUAL AND PROCEDURAL HISTORY**

   Mr. Adams is currently 52 years old, has completed high school and some college, and

REPORT AND RECOMMENDATION - 1

has worked as a janitor.[1]  On February 6, 2007, he applied for benefits, alleging disability as of February 1, 2004.  Tr. 215-26.  His applications were denied initially and on reconsideration.  Tr. 161-69, 172-79.  The ALJ conducted a hearing on July 21, 2008, and found Mr. Adams not disabled.  Tr. 39-74.  The Appeals Council granted Mr. Adams's request for review and remanded to allow the ALJ to obtain additional evidence.  Tr. 108-12.  The ALJ conducted a second hearing on August 27, 2010, and found Mr. Adams not disabled.  Tr. 15-38, 75-90.  As the Appeals Council denied Mr. Adams's request for review, the ALJ's decision is the Commissioner's final decision.  Tr. 1-4.

## II.     THE ALJ'S DECISION

Utilizing the five-step disability evaluation process,[2] the ALJ made the following findings:

> **Step one:**  Mr. Adams had not engaged in substantial gainful activity since February 1, 2004.
>
> **Step two:**  Mr. Adams had the following severe impairment: status post fixation of the right ankle.
>
> **Step three:**  This impairment did not meet or equal the requirements of a listed impairment.[3]
>
> **Residual Functional Capacity:**  Mr. Adams has the residual functional capacity ("RFC") to perform medium work.
>
> **Step four:**  Mr. Adams can perform his past work as a janitor.

Tr. 15-38.

## III.     DISCUSSION[4]

The second step of the sequential disability evaluation process is intended to be "a de minimis screening devise to dispose of groundless claims."  *Smolen v. Chater*, 80 F.3d 1273,

---

[1] Tr. 78, 215, 257.
[2] 20 C.F.R. §§ 404.1520, 416.920.
[3] 20 C.F.R. Part 404, Subpart P. Appendix 1.
[4] All of Mr. Adams's assignments of error converge into one overarching argument regarding the ALJ's assessment of the medical evidence and the manner in which he proceeded through the sequential steps of the disability evaluation process.

REPORT AND RECOMMENDATION - 2

1290 (9th Cir. 1996).  At this step, ALJs must determine whether claimants have made a showing that their medically determinable impairments are severe, such that they significantly limit their ability to perform basic work activities.  *See Bowen v. Yuckert*, 482 U.S. 137, 145 (1987).  An impairment is "not severe" if "it does not significantly limit [the claimant's] physical or mental ability to do basic work activities."  20 C.F.R. §§ 404.1520(c), 404.1521(a).  At step two, "the ALJ must consider the combined effect of all of the claimant's impairments on her ability to function, without regard to whether each alone was sufficiently severe."  *Smolen*, 80 F.3d at 1290.

In this case, the ALJ rejected all of Mr. Adams's impairments as non-severe at step two, other than his status post fixation of the right ankle.  Tr. 21-25.  The ALJ engaged in a relatively lengthy discussion of the evidence of Mr. Adams's mental diagnoses and limitations in this section, but ultimately concluded that these impairments were not severe.  Nonetheless, the ALJ stated that the "record supports diagnoses of posttraumatic stress disorder, major depressive disorder, and cocaine dependence in remission," and found that "previous mental status exam findings support some limitations but these limitations are not disabling to the extent alleged." Tr. 22.  The ALJ did not go on to discuss any mental limitations when assessing Mr. Adams's RFC.  Tr. 27-30.

The ALJ appears to have misunderstood the purpose of the step-two inquiry and in some ways conflated it with the RFC assessment.  The ALJ's concession at step two that Mr. Adams has "some limitations" stemming from his mental diagnoses should have triggered an analysis of those limitations in the RFC assessment, where an ALJ must consider *all* of a claimant's limitations, including non-severe limitations.  *See* 20 C.F.R. §§ 404.1545(e), 416.945(e).

Moreover, the ALJ's step-two analysis of the medical evidence is not legally sufficient. The ALJ assigned "little weight" to the reports of Carla Hellekson, M.D., who opined in August 2006 and reiterated in July 2007 that Mr. Adams had few, if any, cognitive limitations but did have severe social limitations in his ability to relate appropriately to others, interact appropriately

REPORT AND RECOMMENDATION - 3

in public, and respond appropriately to and tolerate the pressures and expectations of a normal work setting.  *See* Tr. 412, 417.  The ALJ stated that Dr. Hellekson noted that Mr. Adams did not seek mental health treatment while he was incarcerated and that this failure suggests his limitations are not as serious as alleged.  It is not appropriate to discount Mr. Adams's allegations on this basis.  *See Nguyen v. Chater*, 100 F.3d 1462, 1465 (9th Cir. 1996) ("[I]t is a questionable practice to chastise one with a mental impairment for the exercise of poor judgment in seeking rehabilitation.")  Furthermore, Dr. Hellekson subsequently noted that Mr. Adams tried to obtain treatment for his mental-health problems, but could not afford such treatment without insurance.  *See* Tr. 410.

The ALJ also discounted Dr. Hellekson's opinions regarding Mr. Adams's social limitations on the grounds that Mr. Adams "uses public transportation and [] testified that he lives in a group home and talks to people in the home, which is inconsistent with *severe* social limitations." Tr. 23 (emphasis added).  While those activities may be inconsistent with severe social limitations, the ALJ did not address whether Mr. Adams has any *non-severe* social limitations.  As explained above, the ALJ's failure to consider non-severe impairments was error.

The ALJ discounted other medical opinions on the grounds that the providers (B. Gustafson, M.D., and James Czysz, Psy.D.) completed checkbox forms, which he characterized as "subjective based in a secondary gain context." Tr. 24 (citing Tr. 573-86).  The reference to secondary gain is unclear: perhaps the ALJ intended to suggest that Mr. Adams was malingering or exaggerating his symptoms for purposes of obtaining benefits, but the record would not support such an inference.  Furthermore, it is unclear by what other means these providers could assess Mr. Adams's mental impairments — a diagnosis of PTSD or depression must inherently rely upon a patient's subjective self-report.  *See Hartman v. Bowen*, 636 F. Supp. 129, 131-32 (N.D. Cal. 1986) ("Psychiatric impairments are not as readily amenable to substantiation by objective laboratory testing as are medical impairments and consequently, the diagnostic techniques employed in the field of psychiatry may be less tangible than those in the field of

REPORT AND RECOMMENDATION - 4

medicine.") Mental status exam findings, though apparently favored by this ALJ, would not necessarily provide particularly relevant measurements regarding social limitations. In any event, Drs. Gustafson and Czysz annotated their DSHS forms with exam notes and observations to support their checkbox lists (Tr. 573-86), and thus the ALJ's concern regarding lack of detail is not particularly well-taken here.

The ALJ instead assigned "significant weight" (Tr. 24) to the opinions of a consultative examiner, Jesse McClelland, M.D., who evaluated Mr. Adams at the Commissioner's request, following the Appeals Council's remand order. Tr. 564-71. The Appeals Council instructed that the ALJ on remand shall obtain an additional "consultative psychiatric examination with psychological testing" (Tr. 111); Dr. McClelland performed a mental status examination in April 2010 and concluded that Mr. Adams had no mental limitations of any kind. *Id.* Though it is true that a mental status examination is a form of psychological testing, it does, as the Commissioner notes, evaluate *cognitive* functioning. *See* Dkt. 15 at 19.[5] It is unclear from Dr. McClelland's report what evidence or observations supported his functional conclusions, because he reviewed only a small portion of the entire record and performed only a mental status examination, and was aware of Mr. Adams's self-reported "isolative" and "irritable" behavior, compounded by an "explosive temper." Tr. 564. Most of Dr. McClelland's mental status exam results[6] were similar to other mental status exam results of record. *See* Tr. 412 (Dr. Hellekson recording that Mr. Adams "did well on standard cognitive exam"), 417 (Dr. Hellekson that recording Mr. Adams "did OK on standard cognitive exam"), 587 (Dr. Czysz recording Mr. Adams's average scores

---

[5] Mr. Adams cites no authority for the proposition that a mental status examination would not constitute the "psychological testing" contemplated by the Appeals Council. While it may not have been the most comprehensive method of testing Mr. Adams's mental functioning, a mental status examination is nonetheless a form of psychological testing. Thus, the Court rejects Mr. Adams's assignment of error related to compliance with the Appeals Council's remand order.

[6] Dr. McClelland opined that Mr. Adams's recent memory is "slightly impaired": "He is [able] to name only [] 1/3 objects after five minutes and was still only able to name 1/3 objects after being given hints." Tr. 566. Dr. McClelland also noted that Mr. Adams's insight is "fair to poor." Tr. 567. Dr. McClelland's exam results in other categories, however, could arguably be considered consistent with previous tests of record.

REPORT AND RECOMMENDATION - 5

on the neurobehavioral cognitive status exam).  Dr. McClelland's description of Mr. Adams's history also recounts similar incidents in Mr. Adams's life and circumstances, but Dr. McClelland did not explain why he — unlike the other providers — ultimately concluded that Mr. Adams had no mental limitations whatsoever.  The ALJ summarized Dr. McClelland's findings as indicating that Mr. Adams "has no severe mental impairment" (Tr. 24), but apparently did not consider whether Mr. Adams has any *non-severe* mental limitations.  Particularly because Dr. McClelland himself indicated that Mr. Adams had, *inter alia*, memory deficits, it appears that the ALJ overlooked some limitations in his focus on severe limitations.

      For these reasons, the ALJ's step-two findings are erroneous because he failed to provide legally sufficient reasons to reject medical opinions regarding Mr. Adams's mental impairments, and this error is harmful because the ALJ did not consider the effect of any mental limitations (including non-severe limitations) when assessing Mr. Adams's RFC.

      The ALJ's RFC assessment is also deficient as to Mr. Adams's physical impairments.  The ALJ purported to give "significant weight" to the opinions of Wendy Boucher, M.D., who opined in April 2006 that Mr. Adams could perform medium work.  Tr. 380.  She also opined, however, that Mr. Adams had limitations in his ability to stand, walk, lift, climb, crouch, pull, push, and stoop.  *Id.*  The ALJ elected to mention and credit Dr. Boucher's opinion regarding Mr. Adams's work level, but did not address the additional limitations addressed by Dr. Boucher or explain why he did not include them in his RFC assessment.  The ALJ did note that the Appeals Council did not reference Mr. Adams's physical limitations in the remand order (Tr. 30), but the Appeals Council's failure to address a particular issue in a remand order does not relieve the ALJ of his responsibility to address medical source opinions.  Accordingly, on remand the ALJ shall reconsider Dr. Boucher's opinions in their entirety and address the physical limitations she identified.  *See* SSR 96-8p, 1996 WL 374184, at *7 (Jul. 2, 1996) ("If the RFC assessment conflicts with an opinion from a medical source, the adjudicator must explain why the opinion was not adopted.").

REPORT AND RECOMMENDATION - 6

## IV.     CONCLUSION

For the foregoing reasons, the Court recommends that the Commissioner's decision be **REVERSED** and the case be **REMANDED** for further administrative proceedings.  On remand, the ALJ should reconsider the opinions of Drs. Hellekson, Gustafson, Czysz, and Boucher to determine whether Mr. Adams has any limitations, including non-severe limitations, that bear on his RFC.  In light of the new RFC assessment, the ALJ shall reconsider the step-four findings and, if necessary, obtain testimony from a vocational expert.

A proposed order accompanies this Report and Recommendation.  Objections, if any, to this Report and Recommendation must be filed and served no later than **January 22, 2013.**  If no objections are filed, the matter will be ready for the Court's consideration on **January 25, 2013**.  If objections are filed, any response is due within 14 days after being served with the objections.  A party filing an objection must note the matter for the Court's consideration 14 days from the date the objection is filed and served.  Objections and responses shall not exceed twelve pages.  The failure to timely object may affect the right to appeal.

DATED this 7th day of January, 2013.

_____
BRIAN A. TSUCHIDA
United States Magistrate Judge